The People of the State of Illinois ex rel. Henry J. Schelling, Appellee, v. Roy L. Watson et al., Appellants.

Gen. No. 8,806.

Opinion filed August 1, 1934.

Faulkner & Faulkner and Dale G. Nicholson, for appellants.

Hill & Miller, for appellee.

Mr. Justice Dove delivered the opinion of the court.

An amended petition, praying for a writ of mandamus commanding the respondents therein, who constituted the Board of Trustees of the Police Pension Fund of Joliet, to vacate and expunge their order of October 10, 1932, which denied a disability pension to relator, was filed, pursuant to leave granted, in the circuit court of Will county. To this petition a general demurrer was overruled and respondents electing to abide by their demurrer, a writ of mandamus was awarded as prayed for. To review this action of the trial court, an appeal has been perfected and the record is before us for review.

The amended petition alleged that on the 7th day of June, 1932, and for many years prior thereto and since that date, the City of Joliet was operating under the provisions of "An Act to provide for the setting apart, formation and disbursement of a police pension fund in cities, villages and incorporated towns in the State of Illinois, having a population of not less than 5,000 and not more than 200,000 inhabitants, in force July 1, 1909," Cahill's St. ch. 24, ¶ 915 et seq.; that on said date, and ever since appellants were the duly elected or appointed members of the Board of Trustees of the Police Pension Fund of said city; that on June 2, 1927, relator was appointed a patrolman on the police force of the City of Joliet; that he was born in Mokena, and lives with his wife and two minor children, and since his appointment has resided and still does reside in Joliet; that on June 11, 1930, while in the discharge of his duties as police officer in the City of Joliet, he was shot with a bullet which entered the

left side of his neck, passing through the apex of his left lung and came out through his back; that he entered a hospital, spending some time therein, and later resumed his duties as patrolman; that on November 2, 1930, while discharging his duties as such police officer, he was thrown from a motorcycle, sustaining injuries to his left hand, wrist, arm and shoulder; that the nature, extent and severity of his injuries physically disabled him so as to necessitate his suspension of the performance of his duties as a member of the police force; that said physical disability still exists and is of a permanent and incurable nature and renders it impossible for relator to perform duties as hard, severe and strenuous as required of a police officer working as a patrolman on the police force of Joliet, or of doing any kind of manual work, requiring the use of both hands; that his left lung was injured and that he sustained injuries to his arm, wrist and hand, as a result of which, motion and extension thereof became nil, the muscles of the forearm atrophied and he lost the use of 75 per cent of his left hand.

The amended petition then avers that on June 7; 1932, relator filed with appellants his verified written petition for a.pension on account of his physical disability arising while in and in consequence of the performance of his duties as patrolman, showing that his disability was of such an extent as to necessitate the suspending of performance of his duty on such police force, and that said injuries resulted from and in consequence of the performance of his duties as such policeman, and that relator also filed with his application certificates of his disability, one of which was subscribed and sworn to by him, another by Dr. Frank J. Chmelik, a practicing physician and surgeon of Joliet, who signed said certificate as police surgeon and who occupied that position, and one each by Dr. T. S. F. Johnson and Dr. John Mitchell, practicing physi-

cians in Joliet, and another by Dr. A. N. Kitenplon, a practicing physician of the City of Aurora, Illinois, who had treated relator's injuries mentioned in relator's amended petition, and all of said certificates were subscribed and sworn to by said respective parties, and all recited facts from which it clearly appeared that relator became physically disabled while in the performance of his duty as policeman to such an extent as to necessitate the suspending of performance of his duty on the police force. The amended petition then alleged that at the time the relator filed said petition, his salary was $140 a month, and had been for at least one year immediately prior to the time of his having suspended performance of his duties as such police officer, and that from the date of his appointment up to and including the date of the filing of his petition there was deducted from his salary one per cent thereof per month, in accordance with the provisions of said Pension Act; that relator appeared before said Board of Trustees of the Police Pension Fund of the City of Joliet at a meeting of said board, held in the police station, and submitted to both oral and physical examinations conducted by the board; that said board did not ask or require other evidence of disability, but wholly ignored and disregarded the evidence submitted, both oral and in the form of said certificates, and also disregarded the results shown by his physical examination, and wrongfully and arbitrarily denied his petition, thereby grossly abusing the discretion vested in the board, which action was prompted by improper motives and was not based upon the facts submitted; that on June 7, 1932, and at all times since, there were sufficient moneys belonging to the pension fund to pay all allowances of such board to its beneficiaries, including the amount to which relator was entitled.

The amended petition prayed that a writ of mandamus issue, directed to the members of said Board of Trustees of the Police Pension Fund, commanding them to vacate and set aside their order denying a disability pension to relator and directing that relator be paid from said fund a pension of $70 per month, being one-half of the salary attached to the rank held by relator, that said pension begin June 7, 1932, and continue until terminated in accordance with the provisions of said Pension Act.

The pertinent part of the Police Pension Fund Act of 1909 provides: "Whenever any policeman, while serving as such, in any such city . . . , shall become physically disabled while in and in consequence of the performance of his duty as such policeman, to such an extent as to necessitate the suspending of performance of his duty on such police force, or retirement from the police force, said board shall order and direct that he be paid from said fund a pension of one-half of the salary attached to the rank he may have held on said police force for one year immediately prior to the time of his so suspending performance of his duty or retirement: *Provided,* that whenever such disability shall cease and said policeman shall resume the performance of his duty on said police force such pension shall cease." "No person shall receive any benefits from said fund, unless there shall be filed with said board, certificates of his disability, which certificates shall be subscribed and sworn to by said person and by the police surgeon (if there be one), and two practicing physicians of such city, village or town, and such board may require other evidence of disability before ordering such payment as aforesaid." Cahill's Illinois Revised Statutes, 1933, ch. 24, ¶¶ 918, 919.

Appellants, by their demurrer to the petition, admitted all facts well pleaded, and inasmuch as the board elected to stand by the overruled demurrer to

the petition, we are bound, for the purpose of this decision, to assume that the statements of the petition are true. *Illinois State Board of Dental Examiners v. People ex rel. Cooper,* 123 Ill. 227.

This statute made it the mandatory duty of appellants to order that relator be paid from the pension fund $70 per month, provided relator, while serving as a policeman, became physically disabled while in the performance of his duty to such an extent as to necessitate the suspending of performance of his duty or retirement from the police force. The statute further provided that before relator should be entitled to be paid this pension, he must file with the board a sworn certificate of disability, executed by himself, a sworn certificate of disability by the police surgeon, if there be one, or by two practicing physicians of Joliet.

Examining the allegations of the amended petition, we find that all these statutory provisions were complied with by relator. The allegations of the amended petition are that while serving Joliet as a policeman on June 11, 1930, he was shot and the petition tells where the bullet entered his body and the range it took and the organs affected. It is then stated that as a result of this, he entered a hospital, being physically disabled and that later he resumed his duties as policeman. The amended petition then alleges that on November 2nd of the same year, while discharging his duties as a policeman, he was thrown from a motorcycle and it described the injuries he received thereby and avers that they are permanent and incurable, and necessitated the suspension of the performance of his duties as a member of the police force. The amended petition then recites that he filed with the board the requisite statutory certificates and specifically sets forth facts which show that the statute in every particular was complied with.

In support of their contention that the allegations of the amended petition are insufficient, counsel for appellants cite the following cases: *People ex rel. Sheppard v. Illinois State Board of Dental Examiners,* 110 Ill. 180; *People ex rel. Jones v. Webb,* 256 Ill. 364; *Calder v. City of Chicago,* 176 Ill. App. 313; *Benner v. City of Chicago,* 176 Ill. App. 317; *Wilke v. Wilson,* 176 Ill. App. 319; *McGann v. Harris,* 114 Ill. App. 308; *Eddy v. People ex rel. Welter,* 218 Ill. 611; *United States v. Arredondo,* 6 Pet. (U. S.) 691. In *People ex rel. Sheppard v. Illinois State Board of Dental Examiners,* 110 Ill. 180, it was sought to compel respondents to issue a license to relator, he having been granted a diploma from a certain dental college, but the court held that the statute did not specifically define what was a reputable college and left it to the discretion and judgment of the board to determine what was a reputable college and the court therefore refused to grant the writ on the ground that the writ will not lie to compel the performance of acts or duties which necessarily call for the exercise of judgment and discretion on the part of the body at whose hands their performance is required. In *Illinois State Board of Dental Examiners v. People ex rel. Cooper,* 123 Ill. 227, the court, after commenting upon its holding in *People ex rel. Sheppard v. Illinois State Board of Dental Examiners, supra,* said: "If a discretionary power is exercised with manifest injustice, the courts are not precluded from commanding its due exercise. They will interfere where it is clearly shown that the discretion is abused. Such abuse of discretion will be controlled by mandamus. A public officer or inferior tribunal may be guilty of so gross an abuse of discretion or such an evasion of positive duty as to amount to a virtual refusal to perform the duty enjoined, or to act at all in contemplation of law; in such a case mandamus will afford a remedy."

*People ex rel. Jones v. Webb, supra,* was a proceeding brought to compel the board of review to list for taxation certain omitted property. A demurrer to the petition was sustained by the trial court, but the Supreme Court held the allegations of the petition sufficient and reversed the judgment of the lower court. There is nothing said in the opinion in that case sustaining appellant's contention in the instant case.

The petitioners in the three cases in 176 Ill. App. 313, 317 and 319, cited by appellants, sought to compel the Board of Trustees of the Fireman's Pension Fund to enroll relators as a beneficiary of that fund. The Appellate Court stated that the allegations of the petition were insufficient, holding that the petitions did not show that the board either exceeded or abused is powers and without such showing, the court had no right to entertain it.

We have examined all the other cases cited by counsel for appellants, but no good purpose can be served by reviewing them.

In *Stiles v. Board of Trustees,* 281 Ill. 636, a mandamus proceeding, petitioner sought to compel the Board of Trustees of the Police Pension Fund of the West Chicago Park Commissioners to grant him a pension. In the course of its opinion the Supreme Court said: "The right of appellant to a pension depends entirely and altogether upon the terms of the act providing for such pension. Not all pension laws are alike, and the *sole question* in any case is whether the person applying for a pension thereunder comes within its provisions. . . . It is the duty of the courts to enforce the law as enacted according to its plain and unmistakable provisions. The courts have no power to change the statute and under the guise of judicial construction either bestow or take away a pension, much less is there such a power in a civil service commission or in the respondent board, which are creatures of the statute and cannot rise above the source of their power."

The act which created the appellant board and prescribed the conditions under which one might participate in the fund created does not make it discretionary with appellants whether they will or will not grant a pension but makes it mandatory where certain facts exist. Accepting as true the allegations of the amended petition, the action of appellants was arbitrary, and unjust to relator, as all the facts are therein alleged which are necessary to entitle him to a pension.

Appellee filed herein a motion to disregard a portion of appellant's reply brief. This motion was taken with the case. In appellant's original brief and argument, counsel stated that the question to be decided was whether or not a petition for mandamus will lie to compel appellants, a quasi-judicial body, to decide a question of fact in a particular way. In their reply brief and argument counsel insist for the first time that the allegations of the amended petition were insufficient, a matter which they ignored in their original brief and argument. It will be noted that every case cited by counsel for appellant in their reply brief was cited and relied upon by counsel for appellee in their brief, and some of these cases have been referred to by us in this opinion. Our rules do provide that no point not contained in the original brief shall be afterwards raised in the reply brief. The purpose of the rule is apparent. We have considered the suggestions of counsel for appellee in support of their motion, and in view of the fact that we believe the allegations of the amended petition sufficient to entitle relator to the relief sought, the motion to disregard will be denied.

There was no error in overruling the demurrer and rendering the judgment appealed from.

*Judgment affirmed.*